# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### CHARLESTON DIVISION

IN RE: ETHICON, INC.,
PELVIC REPAIR SYSTEM
PRODUCTS LIABILITY LITIGATION

MDL NO. 2327

-------------------------------------------------------

THIS DOCUMENT RELATES:
**CASES IDENTIFIED IN EXHIBIT A**

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO LIMIT THE OPINIONS AND TESTIMONY OF JAIME L. SEPULVEDA-TORO, M.D.

Pursuant to the Federal Rules of Evidence, Plaintiffs hereby seek to limit or exclude certain opinions and testimony proffered by Defendant Ethicon, Inc.'s ("Defendant") expert Jaime L. Sepulveda-Toro M.D. In support of their Motion, Plaintiffs state as follows:

## I.   INTRODUCTION

Jaime L. Sepulveda-Toro, M.D. ("Dr. Sepulveda-Toro") is board certified in obstetrics and gynecology and licensed in the State of Florida.[1] However, Dr. Sepulveda-Toro offers opinions in these cases that are beyond his field of expertise, not supported by reliable methodology, or not supported by reliable application of methodology. In these cases, Dr. Sepulveda-Toro proffered two expert reports: (a) one report addressing Gynemesh PS, Prolift, and Prosima (hereinafter referred to as the "Pelvic Organ Prolapse Report" or the "POP Report"); and (b) a second report addressing TVT and TVTO (hereinafter referred to as the "Stress Urinary Incontinence Report" or the "SUI Report"). This Memorandum will first address problems inherent in both reports,

---

[1] *See Expert Opinion of Jaime L. Sepulveda-Toro MD FACOG FACS PRPC Gynemesh PS, Prolift and Prosima Devices* at 1 *and Expert Opinion of Jaime L. Sepulveda-Toro MD FACOG FACS PRPC TVT and TVTO Devices* at 1, attached hereto as **Exhibits B and C**, respectively; *see also Curriculum Vitae of Jaime L. Sepulveda-Toro, M.D.*, attached hereto as **Exhibit D**.

followed by a discussion of problems specific to the SUI Report. With regard to both the POP and

SUI Reports, Dr. Sepulveda-Toro offered opinions on: (1) the safety and efficacy of Defendant's

products; (2) the FDA's Public Health Notices; (3) Defendant's Instructions for Use ("IFU") for

its products; (4) the design of Defendant's products; (5) Defendant's brochures aimed at potential

users; (6) the value of explanted materials; (7) the existence of over 100 studies, and conclusions

extrapolated therefrom; and (8) the pathological opinions offered by Plaintiffs' expert witnesses.

For the reasons set forth below, each of the eight (8) opinions identified in the preceding sentence

should be limited or excluded.

In the SUI Report, Dr. Sepulveda-Toro offered additional opinions on: (1) TVT's status as

the "gold standard;" (2) the documentation of anatomical considerations during the "description

and design" of TVTO; (3) the difference between mechanical-cut and laser-cut mesh in TVT and

TVTO; and (4) the significance of the FDA Section 510(k) approval process. These four opinions

should be struck as well because Dr. Sepulveda-Toro offers these opinions despite lacking

specialized knowledge of these topics, without utilizing a proper methodology, or without reliably

applying methodology as required by Federal Rule of Evidence 702. Dr. Sepulveda-Toro's

testimony on all of these topics should be excluded or limited.

## II.    LEGAL STANDARD

For the sake of brevity and because the Court is fully aware of the legal standards governing

the admissibility of expert testimony in the Fourth Circuit, Plaintiffs will not set forth a detailed

discussion of the legal standard. It is known and understood that the admissibility of expert

testimony is governed by the Federal Rules of Evidence, including but not limited to Rules 702,

403, and 104. *See Bryte v. Am. Household, Inc.*, 429 F.3d 469, 476 (4th Cir. 2005) (federal law

governs admissibility of expert testimony). The trial judge acts as a gatekeeper for scientific,

technical, and other specialized knowledge. *See Daubert v. Merrell Dow Pharms. Inc.,* 509 U.S. 579, 588 (1993); *Kumho Tire Co., v. Carmichael*, 526 U.S. 137, 141 (1999).

## III.    ARGUMENT

Dr. Sepulveda-Toro's medical training in the fields of obstetrics and gynecology do not automatically render his opinions on other ancillary issues admissible. *See Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001). Indeed, each individual opinion he offers must satisfy the requirements of the Federal Rules of Evidence to be admissible. *See, e.g.*, *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *see also Daubert*, 509 U.S. at 579.

As a threshold matter, an expert witness "must have 'knowledge, skill, experience, training, or education' in the subject area in which he will testify." *Bombardiere v. Schlumberger Tech. Corp.*, 934 F. Supp. 2d 843, 846 (N.D. W. Va. 2013) (quoting Fed. R. Evid. 702). In the context of Rule 702, knowledge "connotes more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590. Trial courts must ensure that a purported expert witness "is not merely parroting the opinions of others, but that the *matters upon which she will opine are clearly within her area of expertise.*" *Bouygues Telecom, S.A. v. Tekelec*, 472 F. Supp. 722, 730 (E.D.N.C. 2007) (emphasis added). Thus, a fundamental prerequisite to admission of an expert's opinion is that the opinion be related to that expert's specialized knowledge. *See, e.g.*, *U.S. v. Johnson*, 54 F.3d 1150, 1157 (4th Cir. 1995). Under this clear standard, Dr. Sepulveda-Toro, just like any other expert witness, may only testify on subjects within his area of expertise.

Additionally, Dr. Sepulveda-Toro's opinions must be based upon reliable and proper methods. *See Coleman v. Union Carbide Corp.*, 2013 WL 5461855, at *17 (S.D. W. Va. 2013) (holding that expert testimony must be reliable and relevant to be admissible).

As this Court has recognized in a related MDL:

> Just because an expert may be "qualified . . . by knowledge, skill, experience, training or education" does not necessarily mean that the opinion that the expert offers is "the product of reliable principles and methods" or that the expert "has reliably applied the principles and methods to the facts of the case."

*Cisson v. C.R. Bard, Inc.*, 948 F. Supp. 2d 589, 612 (S.D. W. Va. 2013). The burden is on the

Defendant to show that *each* of Dr. Sepulveda-Toro's opinions has a reliable foundation based on

stated principles and methods. *See Daubert*, 509 U.S. at 597. Opinions which are not within Dr.

Sepulveda-Toro's area of expertise, which are not the product of reliable principles and methods,

or which are not the product of reliable application of principles and methods should be excluded.

### A.     Both the POP Report and the SUI Report Contain Eight Opinions Expressed by Dr. Sepulveda-Toro that Should be Excluded.

The POP Report and SUI Report contain eight opinions expressed by Dr. Sepulveda-Toro

that should be excluded as outside his area of expertise, as not the product of reliable methodology,

as not the product of reliable application of methodology, or otherwise inadmissible.

### (1)     Dr. Sepulveda-Toro's Opinions on the Safety and Efficacy of Defendant's Products Should be Excluded.

Dr. Sepulveda-Toro opines in both reports that all of Defendant's products at issue

(Gynemesh PS, Prolift, Prosima, TVT, and TVTO) are safe and effective. Ex. B at 7, 14-15; Ex.

C at 30. Dr. Sepulveda-Toro's opinion is proffered in spite of the fact that the FDA has classified

the POP devices as high risk and despite the fact that he stopped using the product:

> Q. Do you know how pelvic organ prolapse, transvaginal synthetic polypropylene mesh is currently classified?
>
> A. It's -- I read, recently, the classification for prolapse meshes and for -- they went up to Class 3.
>
> Q. And what does that mean to your understanding?
>
> A. They are classified as high-risk devices.

Q. Do you agree with that?

A. I -- I'll -- I agree with the approval that the FDA has and I'm not going to challenge the FDA or their panel on that one.

**Exhibit E**, Deposition of Jamie Sepulveda-Toro, M.D. dated March 30, 2016 at 104:22-24; 105:1-

10. In fact, Dr. Sepulveda-Toro admits he no longer uses the POP devices in his practice because

he cannot:

Q. But you did stop using Prosima, Prolift and Gynemesh transvaginally at some point after the July, 2011, FDA warning, right?

A. I -- I think I continue using what -- what it did, it did happen is that I communicated, "Listen, we need to take a look at this," but I continued using it.

Q. You continued implanting it?

A. Yes.

Q. Until they were pulled from the market or stopped, they were stopped selling or decommercialized; right?

A. Yes, once you have -- you have that, I don't -- I don't want to use it.

Id. at 248:16-24; 249:1-5. With respect to the SUI products (TVT and TVTO), Dr. Sepulveda-

Toro admits that: "we use the TVT -- TVT-ABBREVO [the most recent design]", id. at 77:16, and

the primary studies he cites in support of his safety and efficacy conclusions, with regard to TVT

and TVTO, are outliers:

Q. . . . You agree with me that the FDA concluded that the, the Cochrane reviews that you have relied on were noteworthy because they found, in view of the FDA, that the risks of perioperative complications made mesh less safe compared to colposuspension, correct?

A. But that's not what it says on the Cochrane review.

Q. That's what the FDA concluded after reading the Cochrane review, correct?

A. Yes, but I don't know how they came to that conclusion.

. . .

Q. Doctor, we're not getting -- it has to be five years or greater. That's all I'm asking you. How many studies, TVTO, five years or longer, that study the safety of the device?

A. I, I already say that I cannot recall one specific number.
. . .

Q. As you sit here right now, you're unable to name one.

Q. Correct?

A. I said I cannot recall.

**Exhibit F[2]**, Deposition of Jamie Sepulveda-Toro, M.D. dated April 8, 2016 at 85:25; 86:1-11; 97:6-12, 19-24, Objections omitted.

Therefore, Dr. Sepulveda-Toro offers the opinion that Defendant's products are safe and efficacious despite his admission that the FDA has classified the POP products as high risk, an opinion he does not disagree with; that he is unable to use the POP products in his practice, and in spite of the fact that he cannot name a single study, five years or longer, that studies the safety of the SUI products. As such, Dr. Sepulveda-Toro's opinions about the safety and efficacy of Ethicon's products as expressed in his expert reports are mere conjecture because they are directly contrary to his admissions in deposition, and are not based upon sound methodology or application of sound methodology and should be excluded. *See also Horton v. W. T. Grant Co.*, 537 F.2d 1215, 1218 (4th Cir. 1976) (relevant testimony may be received if and only if the expert is in possession

---

[2] Ex. F consists of deposition testimony from a Texas state court action, *Ramirez v. Cesar Reyes, M.D., Johnson & Johnson, and Ethicon, Inc.*, Cause No. 2012-CI-18690, in which Ethicon retained Dr. Sepulveda-Toro to defend Ethicon's TVT products against substantially similar allegations as presented in the instant litigation. Any excerpts contained in Ex. F are taken from portions of that deposition which speak to general causation. Because much of Ex. F contains deposition testimony directed at specific causation, that portion of the transcript is not excerpted due to confidentiality concerns. Should the Court desire to examine the entire transcript, Plaintiffs request this be submitted under seal, or some other similarly protective measure.

of such facts as would enable him to express a reasonably accurate conclusion as distinguished from mere conjecture).

>  **(2)    Dr. Sepulveda-Toro's Opinions on the FDA's Public Health Notices Should be Excluded.**

In both the POP and SUI Reports, Dr. Sepulveda-Toro opines: "Pelvic floor surgeons using mesh to treat [POP or SUI] would be aware of and expected to know of the Notice [referring to a 2008 FDA Public Health Notice], the potential complications, as well as their severity and need for reoperation discussed therein, and recommendations made." Ex. B at 15-16; Ex. C at 21. Dr. Sepulveda-Toro's opinion is not cited and constitutes pure conjecture. There is no way for Dr. Sepulveda to *know*, nor did he offer a basis for such knowledge, whether all pelvic floor surgeons "would be aware" of any FDA Public Health Notices, let alone the contents contained therein, or the potential complications, severity or need for reoperation.  Nor did he opine as to the bases of the alleged "expectation" that they should know any of the listed information.  Instead, he just opines in the abstract that "they" should "know." As such, Dr. Sepulveda-Toro's opinion on this issue should be excluded as mere conjecture and he should not be allowed to testify that any particular pelvic floor surgeon "should know" that information[3].

>  **(3)    Dr. Sepulveda-Toro's Opinions on Defendant's IFUs Should be Excluded.**

Dr. Sepulveda-Toro opines: "I have reviewed these IFUs [for POP and SUI products] and find them adequate and complete for its use in the operating room and by the intended users . . .

---

[3] Additionally, it is expected that each Plaintiff will move *in Limine* to exclude evidence related to the FDA's 510(k) clearance and subsequent FDA action, such similar motions granted by this Court in this Ethicon MDL and related TVM MDLs.  See, *Lewis v. Johnson & Johnson,* No. 2:12-cv-04301, 2014 U.S. Dist. LEXIS 4985, at *17-18 (S.D. W. Va. Jan. 15, 2014); *Edwards v. Ethicon,* Inc., *et. al.* 2:12-cv-9972, August 7, 2014, Dkt. 180. Dr. Sepulveda-Toro's opinions on the FDA's Public Health Notices would violate this Court's previous *in limine* Orders.

The IFU adequately informs surgeons of the use of [POP or SUI products] and the potential risks and complications." Ex. B at 16; Ex. C at 22. Dr. Sepulveda-Toro proffers this opinion despite never having drafted an IFU for a medical device at any point during his career:

> Q. . . . Have you ever, in your career, been involved in writing or preparing an IFU for a medical device?
>
> A. I have not written an IFU. I read -- I read IFUs through most of my career.

Ex. E at 124:11-15. Moreover, neither his qualifications nor testimony include *any* specialized knowledge of the federal regulations that govern IFUs.  And, with regard to the SUI product, TVTO, Dr. Sepulveda-Toro concedes he has not even looked at an IFU for six years:

> Q. When is the last time you looked at the IFU to TVO?
>
> A. Probably the last course that we went through.
>
> Q. About six years ago?
>
> A. About six years ago.

Ex. F at 169:4-170:8. Dr. Sepulveda-Toro does not even know whether the IFU has changed or remained the same since he last attended a training session regarding TVTO. Ex. F at 168:19-169:7. Therefore, none of Dr. Sepulveda-Toro's training, education, or skills qualify him to offer an opinion on the adequacy of Defendant's IFUs, and his opinion on this matter should be excluded. *See also Cisson v. C.R. Bard, Inc.*, 948 F. Supp. 2d 589, 612 (S.D. W. Va. 2013) (wherein this Court, in similar litigation, previously recognized that a doctor unfamiliar with federal regulations regarding IFUs is unqualified to testify about the adequacy of warnings).

> **(4)    Dr. Sepulveda-Toro's Opinions on the Adequacy of Design of Defendant's Products Should be Excluded.**

Dr. Sepulveda-Toro opines, with regard to the POP products: "They are not defective and instead these well studied devices have significant usefulness and utility," Ex. B at 21, and with

regard to the SUI products: "They are not defective and instead these well studied slings have

significant usefulness to surgeons in the field." Ex. C at 28. These opinions are inappropriate exert

testimony given that Dr. Sepulveda-Toro is not a biomedical engineer nor did he play any role in

the design of the medical devices at issue, nor does he have any specialized knowledge qualifying

him to render such opinions:

> Q. . . . Would you consider yourself a biomedical engineer?
>
> A. I do not get compensated for doing biomedical engineering.
>
> Q. Okay.
>
> A. And I did not graduate from -- with a degree of biomedical engineering. I do -- I do understand biomedical engineering well.
> . . .
>
> Q. Have you ever, personally, designed a medical device?
>
> A. I -- not -- not a medical device, but I have my own set of needles that I actually made.
> . . .
>
> Q. Were those used in connection with implanting mesh at all?
>
> A. No, I use them for sutures.
> . . .
>
> Q. Were you ever designed -- were you ever involved in the design of any transvaginal mesh devices?
>
> A. Not in the devices of the ones that I use.
>
> Q. Do you have any patents on medical devices?
>
> A. No.

Ex. E at 98:2-9; 99:5-8, 12-14; 100:1-6. As such, Dr. Sepulveda-Toro is not qualified by training,

education or skill to opine on whether or not Defendant's products contain design defects. His

opinions on this matter are therefore speculation and conjecture, *see Horton*, 537 F.2d at 1218, and

should be excluded.

(5)  **Dr. Sepulveda-Toro's Opinions on the Adequacy of Defendant's Brochures Should be Excluded.**

Dr. Sepulveda-Toro opines: "I have used the [POP or SUI] brochures in my practice. Both allow a patient to construct a base to be used in the conversation about the procedure." Ex. B at 18; Ex. C at 22. However, Dr. Sepulveda-Toro indicates no experience in drafting product brochures or that he has ever given input into the drafting process for Defendant's brochures or knowledge of what information is required in a brochure. Nor does Dr. Sepulveda-Toro offer any objective criteria or methodology to determine whether such brochures are adequate.  As such, Dr. Sepulveda-Toro's opinions on the adequacy of Defendant's brochures amount to speculation and conjecture, and should be excluded.

(6)  **Dr. Sepulveda-Toro's Opinions on the Value of Explanted Materials Should be Excluded.**

Dr. Sepulveda-Toro opines: "Explants from humans get forces well beyond the intended force for a [POP or SUI] procedure; explants are in essence useless in the evaluation of the host-graft interaction." Ex. B at 19; Ex. C at 23. Dr. Sepulveda-Toro is not a pathologist and claims no specialized training in explanted materials at issue in this litigation in his expert reports or his deposition transcripts.  Because he lacks specialized training as a pathologist, his opinions on the forces explants receive and their usefulness are not cited nor does Dr. Sepulveda-Toro provide any bases for his opinions.  As such, Dr. Sepulveda-Toro's opinions on the value of explanted materials, which amount to speculation and conjecture, should be excluded.

(7)  **Dr. Sepulveda-Toro's Opinions on the Existence of Over 100 Studies, and the Information Extrapolated Therefrom, Should be Excluded.**

Dr. Sepulveda-Toro opines: "The medical literature including over 100 Gynemesh PS [a POP product] studies, meta-analyses and systematic reviews do not support that the mesh is cytotoxic, that it degrades or leads to a harmful inflammatory response in humans." Ex. B at 20.

With regard to the SUI products, Dr. Sepulveda-Toro's opinion is even more outlandish: "The medical literature including over 1,000 studies, meta-analyses and systematic reviews, and the endorsement of the TVT mesh by the pertinent medical societies do no support that mesh is cytotoxic, that it degrades or leads to a harmful inflammatory response in humans." Ex. C at 27. Both of these claims, with regard to the number of studies and the conclusions drawn therefrom, are not cited, amount to speculation or conjecture, and should be excluded on these bases alone.

Dr. Sepulveda-Toro's deposition testimony further belies his opinions as he admits that the amount of studies noted in his reports, including the conclusions he draws from these purported studies, is greatly overstated:

> Q. And, so, am I correct, you cannot sit here today, Dr. Sepulveda, and tell me how many randomized control studies have been done looking at Ethicon's TVTO [a SUI product]? Can you agree that you can't tell me that number?
>
> A. I can, I can say for certain, without looking into the long version, this is the short version of the Cochrane data review [referring to a deposition exhibit], I can say with accuracy the TOMUS trial.
>
> Q. One?
>
> A. Yes.

Ex. F at 82:11-21. Moreover, Dr. Sepulveda-Toro admits that there are no studies by which to extrapolate as to whether or not polypropylene mesh degrades:

> Q. And there are others that are more qualified than you to testify about whether or not polypropylene degrades?
>
> A. I think that as a surgeon, there is a very limited information that we can give about degradation.
>
> Q. And that would be including yourself?
>
> A. Yes, we don't have that information one way or the other.

Ex. F at 316:7-15. Finally, Dr. Sepulveda-Toro opines in the SUI Report that: "The monofilament knitted Prolene TVT sling has pores which are macroporous (over 75 microns)." Ex. C at 23. Dr.

Sepulveda-Toro takes this position based solely on the fact that "AMI," an Austrian based medical device company, classifies polypropylene mesh in such a way that Dr. Sepulveda-Toro believes qualifies the material as "macroporous" even though he admits the AMI method "has its own limitations," Ex. F at 106:8, and despite the fact that Defendant's own engineers classify Prolene mesh as "small pore." Ex. F at 107:2-25; 108:1-18.

Dr. Sepulveda-Toro not only provides no basis for his opinion that over 100 POP-related studies and over 1,000 SUI-related studies exist (let alone provides a basis for the opinions he draws from these purported studies), but he admits he is not qualified to opine on the subject of degradation, admits he believes there is not enough data to opine on this subject "one way or the other," and takes the position that SUI products utilize macroporous mesh despite Defendant's own position that it does not. Because Dr. Sepulveda-Toro's opinions are not cited or proven to be reliable, and because he admits he is not qualified to opine on degradation, his opinions on these matters should be excluded as unreliable. Moreover, this Court has held that "conclusory statements without further explanation are insufficient to survive *Daubert* scrutiny" and that an expert's opinion may be unreliable if it fails to account for contrary data or literature. *See Sanchez v. Boston Sci. Corp.*, 2014 U.S. Dist. LEXIS 137189, *29-35 (S.D. W. Va. Sept. 29, 2014). Dr. Sepulveda-Toro fails to take certain data and information into account, specifically data compiled by Defendant's own engineers, when forming his opinions related to safety and efficacy without any reasonable explanation as to why, and for these additional reasons, his opinions in this regard should be excluded.

> **(8)** **Dr. Sepulveda-Toro's Opinions on the Pathological Opinions of Plaintiffs' Experts Should be Excluded.**

In the POP Report, Dr. Sepulveda-Toro opines: "The high degree of efficacy, the low rates of complications . . . are inconsistent with and refute the Plaintiff's experts' claims and hypotheses,

which in essence are speculation and conjecture based on irrelevant, unreliable and/or low level data." Ex. B at 20-21. In the SUI Report, Dr. Sepulveda-Toro notes that he has "reviewed the reports of experts for the Plaintiffs," Ex. C at 3; and therefore, the SUI Report is presumably meant to provide a similar pathological rebuttal as the POP Report.

Dr. Sepulveda-Toro is not a pathologist nor does he claim to possess such skills anywhere in his expert reports or deposition transcripts. Dr. Sepulveda-Toro simply does not have the requisite experience, training, or education to proffer these opinions, nor has he utilized *any* method – let alone a reliable method – to reach the conclusions outlined in his report.  Dr. Sepulveda-Toro's opinions amount to nothing more than baseless assumptions and the law is clear that such "unsupported speculation" is not only insufficient, but precisely what *Daubert* aims to prevent.  *Brown v. Auto-Owners Ins. Co.*, No. 96-2613, 1997 WL 547975, at *1 (4th Cir., Sept. 8, 1997) (the expert's testimony must be grounded in methods and procedures in science and not subjective belief or unsupported speculation). As such, Dr. Sepulveda-Toro's opinions regarding the pathological opinions of Plaintiffs' experts should be excluded.

### B.      The SUI Report Contains Four Additional Opinions Expressed by Dr. Sepulveda-Toro that Should be Excluded.

The SUI Report contains four additional opinions expressed by Dr. Sepulveda-Toro that should be excluded as outside his area of expertise, as not the product of reliable methodology, or as not the product of reliable application of methodology.

### (1)      Dr. Sepulveda-Toro's Opinion on TVT's Status as the "Gold Standard" Should be Excluded.

Dr. Sepulveda-Toro opines: "TVT eventually became the gold standard to continence surgeons in the USA." Ex. C at 7. This opinion is directly contrary to Dr. Sepulveda-Toro's deposition testimony:

Q. Would you use the gold standard term to describe a synthetic midurethral sling?

A. I -- I just try to shy away from "gold standard." I think that clinically, it's -- the current clinical standard is probably a better -- a better term.

Q. So a current clinical standard is a better term to use than the term "gold standard;" right?

A. I -- I agree.

Ex. E at 74: 22-24; 75:1-6. Because Dr. Sepulveda-Toro's own deposition testimony disclaims use of the term "gold standard," his expert opinion ascribing "gold standard" status to Defendant's TVT products is unreliable, confusing, and should be excluded.

>    **(2)    Dr. Sepulveda-Toro's Opinions that Documentation of Anatomical Considerations Were Well Documented During the Description and Design of TVTO Should be Excluded.**

Dr. Sepulveda-Toro opines: "These anatomical considerations [referring to support of the urethra] were well documented during the description and design of TVTO." Ex. C at 8. This opinion is not cited and should be excluded as mere speculation or conjecture. Moreover, it is not clear what Dr. Sepulveda-Toro is referring to when he states that anatomical considerations were well documented during the "description" of TVTO. This process of "description" is not described in any way. Moreover, as described in Section I(A), Paragraph 4, *supra*, Dr. Sepulveda-Toro was not involved in the design of any products at issue in this litigation; and therefore, his opinions on any facts related to the "description" or "design" of TVTO should be excluded as unreliable and outside his area of expertise.

>    **(3)    Dr. Sepulveda-Toro's Opinion That Long Term Data on TVT and TVTO are Inconsistent with a Theory That Mechanical Cut TVT Tape is Defective Should be Excluded.**

Dr. Sepulveda-Toro opines: "The long term data on TVT and TVTO are also inconsistent with a theory that mechanical cut tape is defective." Ex. C at 24. This statement is inconsistent with Dr. Sepulveda-Toro's testimony, described in Section I(A), Paragraph 7, *supra*, in which he could only name one (1) randomized controlled study of Ethicon's TVTO. Moreover, Dr. Sepulveda-Toro also admits that there are no clinical studies comparing the difference between mechanical cut tape and laser cut tape, thereby making his instant opinion unreliable:

> Q. And is that -- it's fair to say that you've never actually studied the clinical differences between laser cut and mechanical cut?
>
> A. No, there has been no actual clinical studies to my knowledge, and if you have something that I don't know, please, I will read it.

Ex. F at 53:7-12. Dr. Sepulveda-Toro has concluded that the differences between laser cut mesh and mechanical cut mesh must be insignificant because they never made any difference to him in his own clinical practice. Ex. F at 45:14-18. Although Dr. Sepulveda-Toro concedes that the presence or absence of a clinically significant difference in safety between mechanical cut mesh and laser cut mesh would not be discernable from clinical studies, he failed to adequately consider *other* forms of data indicating greater risks with the mechanical cut products. That is, the only information Dr. Sepulveda-Toro considered discussing the differences between mechanical cut and laser cut mesh before forming his opinion, were documents supplied to him by Defendant or its counsel. Exhibit F at 46:18-21; 47:4-7. The mere fact that the selective literature, presumably provided by Defendant, did not address the differences between laser cut mesh and mechanical cut mesh does not allow Dr. Sepulveda-Toro to reliably testify as an expert that such differences do not exist.

Whether it was not provided to him or whether he simply chose not to substantively address it, Dr. Sepulveda-Toro did not factor into his analysis Ethicon's own internal assessment of functional differences between mechanical cut mesh and laser cut mesh:

> It can be seen in the specific comparison of the degradation between the MCM and LCM samples that in the area the center of the MCM sample has had a significant amount of loss of the knit construction, both on the outer edge, where the wales are lost and across the internal portion, where in some cases only two wales remain. . . In the LCM sample the outer wales are still intact, and the internal structure remains the same as before testing.
>
> . . .
>
> [t]he new material, being laser cut mesh, will dramatically reduce the incidents of linting or fraying or particle loss and should all but eliminate the roping as it stays nice and flat.

**Exhibit G**, PowerPoint Presentation titled LCM Project Photographs Comparing Laser Cut Mesh vs Mechanical Cut Mesh, ETH.MESH.08334245. Thus, Ethicon concluded in its own testing of mechanical cut mesh that there was "degradation of the structure of the mesh in certain areas where, because of particle loss, the knit has opened and a portion of the construction has been lost." *Id.* Meanwhile, "[n]o particles can be seen separated from the [LCM] sample." *Id.* These findings were consistent with Dr. Sepulveda-Toro's own experience that the introduction of laser-cut mesh lessened the particle loss that occurred with mechanically cut mesh. Ex. F at 314:23-315:3.

As such, Dr. Sepulveda-Toro's opinions regarding the "long term data on TVT and TVTO" as related to whether mechanical cut tape is defective are based on non-existent, or at best, unreliable data. Dr. Sepulveda-Toro may also be relying upon the "absence of evidence [which] is not evidence of absence," cited as insufficient in a prior opinion of this Court in similar litigation. *Tyree v. Boston Scientific Corp.*, 54, F. Supp. 3d 501, 583-84 (S.D. W. Va. 2014). Therefore, Dr.

Sepulveda-Toro's opinions on whether or not long term data is inconsistent with a theory that mechanical cut tape is defective should be excluded.

> **(4)    Dr. Sepulveda-Toro's Opinion That the FDA Section 510(k) Approval Process Has Proven the Tolerability and Safety of TVT Polypropylene Mesh Should be Excluded.**

Dr. Sepulveda-Toro opines: "The host graft interaction has been previously submitted to the FDA; tolerability and safety has been proven by the predicate device and graft, in this case the TVT Prolene polypropylene mesh tape." Ex. C at 24 (underscore added). Dr. Sepulveda-Toro fundamentally misunderstands the Section 510(k) process, which is based on equivalency not safety. As this Court has previously held on numerous occasions, a wealth of authority holds that the Section 510(k) process is not related to product safety or efficacy, as well as abundant case law holding that there are no safety requirements imposed by way of the Section 510(k) process.[4] The FDA itself explained the difference between the Section 510(k) process and the more rigorous "premarket approval" process in an amicus brief filed with the Third Circuit in *Horn v. Thoratec Corp.*, 376 F.3d 163, 167 (3d Cir. 2004) ("A pre-market notification submitted under 510(k) is thus entirely different from a [premarket approval,] which must include data sufficient to demonstrate that the device is safe and effective).

As this Court previously held:

> In sum, the parties may not present evidence regarding the 510(k) clearance process or subsequent FDA enforcement actions. This is consistent with prior rulings by this court. *See, e.g., Cisson v. C.R. Bard, Inc.,* No. 2:11-cv-00195, 2013 U.S. Dist. LEXIS 102699, at

---

[4] *See, e.g., Riegel v. Medtronic, Inc.*, 552 U.S. 312, 323 (2008) ("[D]evices that enter the market through § 510(k) have 'never been formally reviewed under the MDA for safety or efficacy"); *Smith v. Depuy Orthopaedics, Inc.*, 2013 WL 1108555, at *4 (D.N.J.2013) ("The 510(k) process is different from PMA because under the 510(k) process, the FDA must find that a new device is ''substantially equivalent' to another device exempt from premarket approval' instead of making a determination regarding the safety and effectiveness of the device….The device is not 'formally reviewed ... for safety or efficacy.'").

*22 (S.D. W. Va. July 23, 2013) ("The FDA 510(k) process does not go to safety and effectiveness and does not provide any requirements on its own. Basically, it has no operative interaction with state tort laws.") (internal reference omitted); Order, *Cisson v. C.R. Bard, Inc.*, No. 2:11-cv-00195, 2013 U.S. Dist. LEXIS 183718 (S.D. W. Va. July 1, 2013), [Docket 309], at 3-4 ("Under United States Supreme Court precedent, the FDA 510(k) process does not go to whether the product is safe and effective . . . . Because the FDA 510(k) process does not go to whether the [mesh] products are safe and effective and the 510(k) process does not impose any requirements on its own, the 510(k) process is inapplicable to this case. This evidence is excluded under Federal Rule of Evidence 402 as irrelevant, and under Rule 403 for the reasons previously stated, including the very substantial dangers of misleading the jury and confusing the issues."); Mem. Op. & Order, *Cisson v. C.R. Bard, Inc.*, No. 2:11-cv-00195, 2013 U.S. Dist. LEXIS 90210 (S.D. W. Va. June 27, 2013) [Docket 302], at 3-4 (holding that evidence regarding the 510(k) process and enforcement should be excluded under Rule 403).

*Lewis v. Johnson & Johnson,* No. 2:12-cv-04301, 2014 U.S. Dist. LEXIS 4985, at *17-18 (S.D. W. Va. Jan. 15, 2014).

Dr. Sepulveda-Toro's clear misunderstanding of the 510(k) process falls short of the "specialized knowledge" required by Rule 702. Because Dr. Sepulveda-Toro is not an expert on FDA regulations, he should be prevented from testifying as to the significance of the Section 510(k) approval of the TVT and TVTO devices[5].

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request Dr. Sepulveda-Toro's opinions in both the POP and SUI Reports be excluded with regard to: (1) the safety and efficacy of Defendant's products; (2) the FDA's Public Health Notices; (3) Defendant's Instructions for Use ("IFU") for its products; (4) the design of Defendant's products; (5) Defendant's brochures aimed at potential users; (6) the value of explanted materials; (7) the existence of over 100 studies, and conclusions extrapolated therefrom; and (8) the pathological opinions offered by Plaintiffs' expert

---

[5] Also, see Footnote 3, above.

witnesses. Further, with respect to the SUI Report, Plaintiffs request Dr. Sepulveda-Toro's opinions be excluded with regard to: (1) TVT's status as the "gold standard;" (2) the documentation of anatomical considerations during the "description and design" of TVTO; (3) the difference between mechanical-cut and laser-cut mesh in TVT and TVTO; and (4) the significance of the FDA Section 510(k) approval process.

Dated: April 21, 2016

Respectfully submitted,

By:  /s/ Aimee Wagstaff
Aimee H. Wagstaff (CO Bar No. 36819)
John R. Crone (CO Bar No. 48284)
ANDRUS WAGSTAFF, P.C.
7171 W. Alaska Dr.
Lakewood, CO 80226
Telephone: (720) 208-9403
Fax Phone: (303) 376-6361
aimee.wagstaff@andruswagstaff.com


/s/Thomas P. Cartmell
Thomas Cartmell, Esq.
Jeffrey M. Kuntz, Esq.
Wagstaff & Cartmell LLP
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
816-701-1102
Fax 816-531-2372
tcartmell@wcllp.com
jkuntz@wcllp.com


/s/ D. Renee Baggett
Renee Baggett, Esq.
Bryan F. Aylstock, Esq.
Aylstock, Witkin, Kreis and Overholtz, PLC
17 East Main Street, Suite 200
Pensacola, Florida  32563
(850) 202-1010
(850) 916-7449 (fax)
rbaggett@awkolaw.com
baylstock@awkolaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2016, a true and correct copy of Plaintiffs' Memorandum

of Law in Support of Their Motion to Limit the Opinions and Testimony of Jaime L. Sepulveda-

Toro, M.D. was served via electronic mail with the Clerk of the Court using the CM/ECF system,

which will send notification of such filing to the CM/ECF counsel of record.

Dated: April 21, 2016


Respectfully submitted,

By: ___/s/ Aimee Wagstaff_____
ANDRUS WAGSTAFF, P.C.
7171 W. Alaska Dr.
Lakewood, CO 80226
Telephone: (720) 208-9403